IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

TY INC.,

    Plaintiff,                                             Case No.

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A
HERETO,

    Defendants

## DECLARATION OF ANNA K. REITER

I, Anna K. Reiter, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business, except where otherwise stated. If called as a witness, I could and would testify to the statements made herein.

2. I am the General Manager of New Alchemy Solutions Ltd. and am knowledgeable about or have access to business records concerning the brand protection operation of TY INC. ("TY").

3. New Alchemy Solutions Ltd., working in cooperation with TY, has identified numerous domain names linked to interactive websites and marketplace listings on platforms such as iOffer and AliExpress, including the interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached to the Complaint in the above-captioned matter (collectively, the

1

"Defendant Internet Stores"), which are or were offering for sale, selling and importing counterfeit products in connection with counterfeit versions of TY's federally-registered TY and TY logo Trademarks ("Counterfeit TY Products") to consumers in this Judicial District and throughout the United States. Despite TY's online enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores.

4. In cooperation with, and under the direction of TY, we perform, supervise and/or direct investigations related to Internet-based infringement of the TY Trademarks. Our investigation shows that Defendants identified in the above-captioned matter ("Defendants") are using the Defendant Internet Stores to sell Counterfeit TY Products from foreign countries such as China to consumers in the U.S. and elsewhere. We have analyzed each of the Defendant Internet Stores and determined that Counterfeit TY Products were being offered for sale in the United States, including Illinois. This conclusion was based on: visual inspection of the products listed for sale on the website; the price at which the Counterfeit TY Products were offered for sale; other features commonly associated with websites selling counterfeit products, such as offering shipment to the United States, including Illinois; and the fact that Defendants and their websites do not conduct business with TY and do not have the right or authority to use the TY Trademarks for any reason. True and correct copies of the screenshot printouts showing the active Defendant Internet Stores reviewed are attached as <u>Exhibit 2</u>.

5. Upon information and belief, Defendants facilitate sales by designating the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine TY Products. Many of the Defendant Internet Stores look legitimate and accept payment in U.S. dollars via credit cards, Western Union, Amazon and/or PayPal. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an

2

authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee®, Visa®, MasterCard® and/or PayPal® logos. TY has not licensed or authorized Defendants to use their TY Trademarks and none of the Defendants is an authorized retailer of genuine TY Products.

6. Upon information and belief, Defendants also deceive unknowing consumers by using the TY Trademarks without authorization within the content, text and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for genuine TY Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings appear at or near the top of relevant search results and misdirect consumers searching for genuine TY Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.

7. Defendants often go to great lengths to conceal their identities and frequently use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant Domain Names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

8. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit TY Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit TY Products were manufactured by, and come from, a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HADJL user-defined variables, domain redirection, lack of contact information, identically or similarly-priced hosting services, similar name servers and the use of the same text and images.

9. In addition to operating under multiple fictitious names, Defendants in the case and defendants in other similar cases against online counterfeiters, use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize the chances of detection by U.S. Customs and Border Protection.

10. Counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as Amazon and/or PayPal accounts behind layers of payment gateways so that they can continue operation despite 's enforcement efforts of trademark

4

owners such as TY. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal or similar accounts to off-shore bank accounts outside the jurisdiction of this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on <u>August 26, 2020</u>.

/s/ _[signature]_